# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TODD SHACKLEFORD and MARTHA WOOLERY, <br><br>On Behalf of Themselves and <br>All Others Similarly Situated, <br><br>      Plaintiffs, <br>v. <br><br>CARGILL MEAT SOLUTIONS CORPORATION, <br><br>      Defendant. | Case No. 12-CV-4065-FJG |

# ORDER

  Currently pending before the Court is the parties' Joint Motion for Approval of Settlement (Doc. # 36) and plaintiff's Motion for Attorney Fees (Doc. # 38).

## I. BACKGROUND

  Plaintiffs are individuals who are employed by Cargill Meat Solutions Corporation ("Cargill"), as hourly production workers at Cargill's turkey processing facility in California, Missouri. On March 8, 2012, plaintiffs filed a Complaint on behalf of themselves and other similarly situated employees. Plaintiffs sought relief on a collective and class wide basis relating to defendant's alleged practice and policy of not fully compensating its employees for time spent donning and doffing required protective gear and equipment, walking to and from production lines, work and equipment stations, waiting in line for equipment, cleaning equipment and waiting at or near their assigned work areas, both before and after their shifts. Cargill filed its Answer on April 9, 2012 and denied plaintiffs' allegations. Additionally, Cargill raised numerous affirmative defenses. The parties engaged in written discovery, participated in preliminary

settlement negotiations and discussions concerning the parties' claims and defenses. On June 27, 2012, the parties participated in a settlement conference with Magistrate William Knox and were able to reach an agreement in principle to resolve the plaintiffs' claims. The parties have filed a Joint Motion for the Approval of the Settlement and plaintiffs' counsel have filed a separate Motion for Attorneys' Fees & Costs.

## II. STANDARD

**Fair Labor Standards Act Certification**

> Section 7 of the FLSA mandates that an employer may not subject non-exempt employees to a work week in excess of 40 hours unless the employee is compensated for her overtime with additional pay of at least one and one half times her regular hourly wage. 29 U.S.C. § 207. The Act also provides that any employer who violates this restriction 'shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.' 29 U.S.C. § 216(b). An action to recover the overtime and liquidated damages may be maintained 'by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.' Id.

Young v. Cerner Corp., 503 F.Supp.2d 1226, 1228 (W.D.Mo. 2007). In Graham v. Town & Country Disposal of Western Missouri, Inc., No. 4:10-CV-00551-NKL, 2010 WL 5173181 (W.D.Mo. Dec. 14, 2010), the Court noted that "[f]ederal courts have used varying standards to determine whether potential opt-in plaintiffs are 'similarly situated' under § 216(b). . . .Though the Eighth Circuit Court of Appeals has not indicated which standard should be used, a majority of the district courts in the Eighth Circuit use the two-step analysis adopted in Mooney v. Aramco Services Co., 54 F.3d 1207 (5th Cir.1995)." Id. at *2 (internal citations omitted). The Court noted that under this approach, plaintiff will first move for conditional certification for notice purposes early in the litigation and the standard that courts apply is a lenient one. At the second stage of

2

the process, the defendant may then move to decertify the class after the close of discovery. Id.

## III.  DISCUSSION

### A.  Class Certification

In the instant case, plaintiffs did not move for conditional certification before they agreed to settle the case.  As discussed above, in considering whether plaintiffs are similarly situated for purposes of certification under the first step, the standard is lenient one.  Once the parties have reached the second step, the court makes a factual determination on whether the plaintiffs are similarly situated.  Brennan v. Qwest Communications Inter., Inc., Civil No. 07-2024 ADM/JSM, 2009 WL 1586721 (D.Minn. June 4, 2009).  "In deciding whether plaintiff's are similarly situated, a court considers several factors, including (1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) other fairness and procedural considerations."  Id. at *3.

With regard to the first factor, all of the plaintiffs are hourly production workers who worked in defendant's turkey processing facility in California, Missouri.  There is a distinction made in the Settlement Agreement between employees who wore standard Personal Protective Equipment ("PPE") and those employees who wore specialized PPE.  However, other than this fact, the Court finds no other differences amongst the class of plaintiffs.  In the motion for approval of the settlement, defendant discussed defenses which were raised during the litigation.  However, these defenses would have applied to the entire class and not to individual plaintiffs.  Finally, the Court also finds that other "fairness and procedural considerations, including the number of plaintiffs in

3

this case and the effectiveness of allowing them to pool their resources for litigation, also weigh in favor of collective treatment." Valladon v. City of Oakland, No. C 06-07478SI, 2009 WL 2591346 (N.D.Cal. Aug. 21, 2009). Accordingly, the Court hereby determines that this case should be finally certified as a collective action under the FLSA. The Court will now proceed to analyze the settlement of the class action.

### B. Analysis of the Settlement

> [I]n the context of a private action to recover unpaid wages, a district court may enter a stipulated judgment after scrutinizing the settlement for fairness. . . . If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation.

McCaffrey v. Mortgage Sources, Corp., No. 08-2660-KHV, 2011 WL 32436 at * 3 (D.Kan. Jan. 5, 2011)(internal citations omitted).

> [C]ourts entertaining a proposed settlement in a § 216(b) case must find that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties concerned. . . . Courts have also regularly applied the same 'fairness' factors applied to a proposed settlement of a Rule 23 class action by analogy to a proposed settlement of a § 216(b) collective action to determine whether the proposed settlement is fair and reasonable. . . . Those factors are the following: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

Moore v. Ackerman Investment Co., No. C 07-3058-MWB, 2009 WL 2848858, *2 (N.D. Iowa Sept. 1, 2009)(internal citations omitted).

In the Motion for approval of the settlement, counsel state that the parties engaged in extensive factual investigation regarding plaintiffs' claims including written

4

discovery and production by defendants of relevant documents and data related to these claims. Thus, the Court finds the parties engaged in substantial discovery before arriving at the proposed settlement. As to the second factor, the parties state that they analyzed the application and scope of Cargill's position and defenses, including the "de minimis" defense and the parties' risks related to the uncertainty of whether or not this defense would be successful. The parties also acknowledged that there was conflicting caselaw on this issue. The parties state that the settlement resulted only after reviewing defendant's documents relating to its compensation policies, employee "swipe time" and time clock records, and employee payroll records, analyzing the nuances and applications of the FLSA and various defenses to it and engaging in a settlement conference. As to the third factor, the Court finds no evidence that there has been any fraud or collusion in this case. The Court also finds that class counsel are experienced in this area and have represented plaintiffs in other FLSA cases. Plaintiffs' counsel state in the Motion for Approval, that they "believe the settlement is fair, reasonable and adequate." (Suggestions in Support of Motion for Approval, p. 15). With regard to plaintiffs' chances for success vs. the amount of the settlement, plaintiffs' counsel stated: "if any of Plaintiffs' claims for uncompensated work were ultimately found to have merit, and the case was certified as a collective action, [Cargill] would be faced with the prospect of a monetary verdict in favor of Plaintiffs, as well as an obligation to pay litigation fees and costs incurred by Plaintiffs." If [Cargill's] arguments were ultimately proven correct, then Plaintiffs might receive no recovery of any kind." (Suggestions in Support of Motion for Approval, p. 12). Plaintiffs' counsel states that each settlement participant who worked throughout the relevant time period performing Pool A work (wearing standard PPE) is eligible to receive approximately $686.62 and

5

Case 2:12-cv-04065-FJG   Document 39   Filed 01/17/13   Page 5 of 9

each participant who performed Pool B work (wearing specialized PPE), is eligible to receive approximately $370.01. Participants who worked fewer weeks will receive a proportionate share of these amounts, depending on how many weeks they performed work in the two different classifications. Plaintiffs' counsel state that the settlement will provide plaintiffs with the certainty of the monetary payment, now as opposed to having to wait a significantly longer period of time if the case were to go to trial and face the possibility that their might be no recovery if their claims were ultimately proven to be unsuccessful. Although plaintiffs' counsel believed that their claims had merit, they recognized that they also faced significant obstacles, including the prospect of a jury trial and the difficulty in proving the nature and extent of their damages. Defendant has agreed to pay a total of $ 188,000.00. Of this amount, $6,000.00 has been allocated to the cost of the settlement administration. Each of the two named plaintiffs will receive an award of $2,500.00 for acting as a class representative. The remainder of the class members will be paid according to the formula described above, which is based in part on the number of weeks the class member worked in either Pool A or Pool B during the applicable opt-in period. Settlement class members will be given an opportunity to participate in the settlement if they file consents to opt in to the lawsuit within a period of sixty (60) days following the date the Claims Administrator mails the Notice of Settlement to Settlement Class Members. The Court finds that the settlement is reasonable based on the chances of success when weighed against the risks plaintiffs faced by continuing the litigation.

### C. Motion for Attorneys' Fees & Costs

6

Case 2:12-cv-04065-FJG   Document 39   Filed 01/17/13   Page 6 of 9

Plaintiffs have also filed a Unopposed Motion for Approval of Attorneys' Fees. Plaintiffs state that during mediation the parties negotiated attorneys fees and costs as part of the settlement. Plaintiffs are seeking the award of $47,000.00 as attorneys' fees and costs incurred in investigating and litigating this case. This amount represents 25 percent of the settlement fund. However, plaintiff's counsel provided no other information regarding the calculation of the attorneys' fees in this case, such as the number of hours worked on the case and the hourly rate for those attorneys and paralegals who worked on the case. Without such information, the Court is unable to determine whether the number of hours spent on this case by the attorneys and paralegals was reasonable or necessary. Additionally, the Court notes that plaintiffs' counsel has not shown that the hourly rates are either reasonable or customary. The Court requires additional information before it can determine what a reasonable award of attorneys' fees and costs would be in this case. Accordingly, plaintiffs' counsel is hereby **ORDERED** to file a Supplemental Motion for Approval of Attorneys' Fees which shall include detailed time records and affidavits attesting to the time spent on this case and the reasonableness of the hourly fees requested. Plaintiffs' counsel shall file this additional information with the Court on or before **February 1, 2013**.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **ORDERS** that:

1. For settlement purposes, the Court certifies this case as a collective action under Section 16(b) of the Fair Labor Standards Act ("FLSA") and appoints Todd Shackleford and Martha Woolery as class representatives and appoints Brady &

Associates as class counsel. The Court therefore **GRANTS** the parties' Joint Motion for Approval of Settlement (Doc. # 36).

2. This Order will be binding on the FLSA Collective Class Members who become FLSA qualified claimants as defined in the Settlement Agreement.

3. The Court finds that the Agreement is fair, reasonable and adequate and is in the best interests of the FLSA Collective Class members and should be and here is approved, in light of the benefits accruing to the FLSA Collective Class members, the substantial discovery and investigation conducted by Class Counsel prior to the proposed settlement and the complexity, risk, expense and possible length of time of continued litigation.

4. The Court approves Dahl Administration LLC as the Claims Administrator.

5. The FLSA Notice proposed by the parties fully and accurately informs the FLSA Collective Class members of all material elements of the Litigation and the proposed Agreement.

6. The Court approves the Settlement Agreement and approves the form of the Notice and the distribution to the FLSA Collective Class members of: a) the Notice of Collective Action Settlement; b) the Consent to Join and c) "Computation of Your Settlement Share".

7. Within the time period specified in the Settlement Agreement, the Claims Administrator shall mail the Notice of Settlement, Consent to Join, and "Computation of Your Settlement Share," by First-Class mail to the last known address of each settlement class member. The Administrator shall mail to the Named Plaintiffs and those individuals who have already opted in, the Notice of Settlement and "Computation of Your Settlement Share."  FLSA Collective Class Members must exercise their right to

opt-in to the Settlement within sixty (60) days of the mailing or other distribution of the Notice.

8. All FLSA Qualified Claimants shall be permanently barred from commencing, prosecuting or otherwise maintaining in any court or forum any action against the Released Parties regarding any and all FLSA Released Claims relating to this litigation.

9. Without affecting the finality of the FLSA Approval Order, the Court retains exclusive jurisdiction over the consummation, performance, administration, effectuation and enforcement of this FLSA Approval Order, including but not limited to acceptance of the filing of completed Consent to Join forms. Additionally, the Court retains jurisdiction over Cargill Meat Solutions Corporation, Named Plaintiffs and each FLSA Qualified Claimant for the purpose of enabling them to apply to the Court for such further orders and directions as may be necessary or appropriate for the construction and implementation of the terms of the Agreement and this FLSA Approval Order.

Date: <u>January 17, 2013</u>  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri  Fernando J. Gaitan, Jr.
  Chief United States District Judge